***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which the parties entered into as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the parties.
3. Defendant is a duly qualified self-insured for workers' compensation purposes, and Key Risk Management Services is its servicing agent.
4. Plaintiff's average weekly wage is $541.17, which yields a compensation rate of $360.96 per week.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACTS
1. Plaintiff was employed as a heating and air mechanic on 3 August 1999, when he sustained a minor injury by accident. He slipped and bumped his left knee while stepping over previously installed duct work. Plaintiff testified that he experienced pain immediately in his left knee and right hip, but he did not report the injury on 3 August 1999. Plaintiff returned to work the next day, 4 August 1999, and while working suffered another injury by accident when he slipped again, but did not fall, aggravating the pain in his left knee. Plaintiff reported the injury on 4 August 1999. Plaintiff's injuries aggravated his pre-existing hip condition.
2. Before starting work with defendant in February 1999, plaintiff had not worked for approximately 10 years. Plaintiff receives Social Security Disability benefits for prior work injuries to his left arm and right shoulder and for right hip injuries suffered in a motorcycle accident which occurred in 1976.
3. In December 1994, plaintiff presented to Dr. James H. Lipsey for an evaluation to determine eligibility for Social Security Disability benefits. At that time, Dr. Lipsey assigned work restrictions to plaintiff consisting of no standing for more than four hours, no frequent bending or squatting and no lifting of over 40 pounds occasionally or 20 pounds frequently. At the hearing before the Deputy Commissioner, plaintiff admitted that he had been having difficulty with his pre-existing left arm condition and had considered resigning his employment prior to the 3 and 4 August 1999 incidents.
4. Following the incidents on 3 and 4 August 1999, Ms. Scarlet Laughter, defendant's office manager, repeatedly called plaintiff to remind him that company policy required employees who reported a work injury to present themselves immediately for an examination and drug testing at Western Carolina Occupational Health. When plaintiff eventually returned the calls several days later, he advised Ms. Laughter that he had been out of town for a number of days.
5. Plaintiff reported to Western Carolina Occupational Health Center on 10 August 1999. He was examined by a physician's assistant who found bruising and tenderness in the left knee and right hip. Plaintiff was diagnosed with right hip and left knee contusions and strains. He was given work restrictions of occasional walking and no climbing, bending or squatting, and was asked to return to the Center in a week.
6. After being provided with the work slip, Ms. Laughter tried to contact plaintiff about light-duty work. Although she did not speak to him directly, she left messages that he did not return. After several days without a response from plaintiff, he was terminated. At the hearing before the Deputy Commissioner, plaintiff indicated that he refused the offer of light-duty work because his job was construction work, and there was no such thing as light-duty work. However, Mr. Mark Sawyer, the project manager for defendant, testified that he had several light-duty jobs available in the sheet metal department, and there was a company policy to utilize all employees that it had due to the tight labor market.
7. The Full Commission finds Mr. Sawyer's testimony that light duty work was available to be credible. Plaintiff's refusal to accept suitable employment was not justified, as he never even attempted to perform the light duty work.
8. On 23 August 1999, plaintiff presented to Dr. Louis Schroeder, his personal physician. Dr. Schroeder noted that plaintiff was not limping, and that there were no objective findings other than tenderness. Dr. Schroeder contacted Dr. John Lange at the Occupational Health Center and made an appointment for plaintiff to be re-examined on 24 August 1999.
9. On 24 August 1999, Dr. Lange examined plaintiff. He noted in his record some verbally abusive behavior by plaintiff based on plaintiff's belief that he was not being treated appropriately. X-rays were taken. Dr. Lange noted that the x-rays "showed substantial degenerative changes in both of the area that [plaintiff] complained about." Further, all findings on the x-rays were noted to be old, between 2 and 5 years, according to Dr. Lange's records. However, when Dr. Lange was asked if plaintiff had any prior problems with his left knee and right hip, he indicated that he felt there was a definite effort by plaintiff to deceive him when discussing the pre-existing condition. Dr. Lange further felt that plaintiff was being less than candid with him about his current condition, and he did not believe the minor incidents plaintiff described were the "proximal cause of plaintiff's complaints."
10. Plaintiff's neighbor and co-worker, Ronnie W. Buckner, testified that he did not see plaintiff fall on 3 August 1999, but heard him yell out. Plaintiff told Mr. Buckner that he had fallen. Mr. Buckner noticed that plaintiff was limping later that day and at work the next day. On cross-examination, Mr. Buckner stated that he has seen plaintiff on several occasions since the date of injury at the grocery store and doing yard work, and that he had not noticed plaintiff limping on these occasions.
11. On 21 February 2000, plaintiff presented to orthopedic surgeon Dr. Tally H. Eddings, with complaints primarily of left knee pain, along with some right hip discomfort. Dr. Eddings found some tenderness on the front and outside of plaintiff's knee. Dr. Eddings prescribed medication and arranged for an additional examination after 30 days.
12. On 8 March 2000, plaintiff was seen by neurologist Dr. Jon Silver, on referral from Dr. Lange for his hip condition. Plaintiff informed Dr. Silver that his left knee pain had subsided after a couple of days following the 3 August 1999 incident, but that his right hip pain continued. Dr. Silver noted that while plaintiff complained of hip pain, he had no lower back pain or radicular pain, leading him to believe that plaintiff's lumbar spine was not the cause of plaintiff's pain. He recommended to Dr. Lange that plaintiff undergo an orthopedic evaluation to be sure that it was not "a primary hip problem."
12. Plaintiff returned to Dr. Eddings on 21 March 2000 with continuing complaints of knee pain. Dr. Eddings continued conservative treatment through injections which contained, in part, a local anesthetic. When plaintiff returned on 5 April 2000, Dr. Eddings took an x-ray of plaintiff's right hip and noted some mild changes consistent with arthritis. Plaintiff continued treatment with Dr. Eddings. On 7 July 2000, plaintiff presented with "considerable complaints of multiple areas of pain, specifically left knee and right hip." Plaintiff sought another injection, but Dr. Eddings' examination revealed no joint fluid and full range of motion. He advised against continuing the injections, and recommended physical therapy.
13. Dr. Eddings most recent diagnosis is that plaintiff suffers from iliotibial band friction syndrome. He opined that the prognosis is usually good with conservative treatment and physical therapy, and that there are no surgical procedures to correct the condition. Dr. Eddings further stated that plaintiff's condition could have been aggravated by a direct blow to the knee causing inflammation, and that the condition was painful, which may interfere with plaintiff's ability to perform some duties. However, based on plaintiff's continuing complaints and alleged failure to improve, Dr. Eddings wondered if there might not be another potential etiology for plaintiff's complaints.
14. Dr. Lipsey, an orthopedist who had previously examined plaintiff for his right hip condition in 1994, performed an independent medical examination on 19 September 2000. Dr. Lipsey found no significant changes in plaintiff's right hip condition from 1994 to 2000. Any minimal changes noted in 2000 from his exam six years earlier would be associated with the progression of the pre-existing degenerative condition. Dr. Lipsey also specifically found Dr. Eddings' diagnosis to be unlikely due to the pathology, and Dr. Lipsey opined that the most appropriate diagnosis was that plaintiff had some scarring at the point of impact just below the left knee which accounted for his symptoms in that area. Dr. Lipsey found no internal structural injury of the knee. Further, he found no evidence in the right hip of significant injury related to the recent accident reported by plaintiff, nor could he find any objective indications for pain on physical examination or in the x-rays. Finally, Dr. Lipsey, who treated plaintiff in 1994, indicated that the restrictions he would assign to plaintiff following the 19 September 2000 examination were the same restrictions he had assigned in 1994, and these restrictions were the result of plaintiff's pre-existing hip condition. Dr. Lipsey had no treatment recommendations for plaintiff's left knee condition.
15. After careful review, the Full Commission gives greater weight to the expert testimony of Dr. Lipsey, who was in the best position to comment on plaintiff's right hip condition before and after August 1999 because he specifically examined plaintiff for this condition in 1994 and in 2000. Plaintiff did not sustain a material aggravation of his pre-existing right hip condition as a result of the injury by accident. Further, plaintiff suffered only a left knee contusion with residual scarring as a result of the minor injury by accident. Plaintiff has suffered no permanent impairment to the left lower extremity as a result of this minor injury by accident. Plaintiff is in need of no further medical treatment as a result of his left knee contusion and residual scarring.
16. Since the 3 and 4 August 1999 incidents, plaintiff has not returned to work. After the initial medical examination by Occupational Health and the light duty release, defendant offered plaintiff light-duty work, but he refused that work and was terminated. Plaintiff has not looked for any type of work since his injury. Plaintiff's only income is the Social Security Disability benefits he has continued to receive for his non-work related conditions.
17. There is insufficient medical evidence that plaintiff cannot work in any employment as a result of this minor work injury. No physician ever took plaintiff out of work or found that plaintiff cannot work in any employment as a result of his knee and hip problems. In August 1999, approximately one week after the minor incident, Dr. Lange did assign plaintiff restrictions of occasional walking and no bending, stooping or climbing. While those restrictions remained in place for a period of time, defendant immediately offered light duty work, and in any event, those restrictions did not prevent him from working altogether.
18. Jane Veal, a vocational rehabilitation professional testified before the Deputy Commissioner that a person with plaintiff's educational level (a GED) and work restrictions could find work in the Buncombe County area if he or she made the effort. It was her testimony that with some effort, an average person, not skilled in vocational case management, could have found suitable employment even when taking into account physical limitations. She specifically identified several jobs, including security guard positions, motel clerk and forklift operators, that she felt plaintiff was capable of performing if he had searched for work. The Full Commission finds that it would not be futile for plaintiff to have looked for work after he constructively refused to accept suitable, light duty employment offered by defendant-employer.
19. Based upon the evidence of record, the Full Commission finds that plaintiff's testimony that he suffers from significant physical limitations and restraints as a result of his left knee contusion and residual scarring is not credible. The greater weight of the evidence is that plaintiff suffered only a minor injury and no disability as a result of the work accidents of 3 and 4 August 1999.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On 3 August 1999, plaintiff suffered a minor injury by accident to his left knee arising out of and in the course of his employment resulting in a left knee contusion and residual scarring. On 4 August 1999, plaintiff suffered a mild aggravation of the injury by accident when he slipped but did not fall at work. N.C. Gen. Stat. § 97-2
(6).
2. Plaintiff did not sustain a material aggravation of his pre-existing right hip condition in the work incident of 3 August 1999. N.C. Gen. Stat. § 97-2.
3. Plaintiff has failed to meet his burden of proving that he was disabled or otherwise suffered any diminution of his wage-earning capacity as a result of his left knee contusion and residual scarring or his right hip condition. Hilliard v. Apex Cabinet Co., 305 N.C. 593,290 S.E.2d 682 (1982).
4. Defendant is obligated to pay for all medical treatment received by plaintiff which was reasonably related to his 3 and 4 August 1999 injuries by accident. Plaintiff is in need of no further medical treatment as a result of this injuries. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for indemnity benefits under the Workers' Compensation Act is DENIED.
2. Defendant shall pay all medical expenses reasonably related to plaintiff's 3 and 4 August 1999 injuries.
2. Defendant shall pay the costs of this action.
This the ___ day of April, 2002.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
DISSENTING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER